## In re Annexation Ordinances by Borough of Carlisle

*William F. Martson,* of *Martson & Snelbaker,* for Borough of Carlisle.

*Heath L. Allen, George B. Stuart, Robert R. Black* and *Robert L. Rubendall,* for South Middleton Township.

WEIDNER, *J.,* January 28, 1974—The subject matter of this opinion, the township's objection to signatures on a petition to the borough for annexation, was disposed of by opinion and order of this court dated December 6, 1972.

Thereafter, the township requested reargument on the basis of the recent case of Manor Township v. Millersville Borough, 9 Pa. Commonwealth Ct. 143 (1973). After reargument, we affirm our prior opinion and order.

This case involves appeals by the Township of South Middleton from two annexation ordinances adopted by the council of the Borough of Carlisle on October 12, 1967. Ordinance no. 1021 involved the annexation of a 41.092 acre tract of land, the legality of which has not been challenged. (Judgment as to the propriety of both annexations has been reserved pending further argument.) Ordinance no. 1022 involved the annexation of a 724.153 acre tract, originally an integral part of the township, the legality of which is presently at issue.

Both annexations have been pursued under the provisions of section 426 of the Borough Code, February 1, 1966, P.L. (1965) 1656, no. 581, sec. 426, 53 PS §45426, which required that the petition to borough council "shall be signed by a majority in number of the freeholders of the territory to be an-

nexed." By stipulation it has been established that the petition prompting ordinance no. 1022 contained 46 signatures, purporting to be a majority by one of the ninety freeholders in the area to be annexed. Presently at issue before this court is the validity of three of the 46 signatures.

Each of the 46 freeholders named in the petition was qualified to sign. All but three signed personally. Those three were made signatories by authorized representatives, each signature following the format: *"freeholder by agent,* attorney-in-fact."

Each of the three freeholders so named had been outside the county at the time the petition was signed and had expressly authorized the respective attorney to sign the petition as his or her agent. It is apparent on the face of the petition that signature by the respective agents was made in a representative capacity, viz: "the principal's name followed by the agent's name preceded by the preposition 'by' . . ." in compliance with recognized agency principles. See Restatement 2d, Agency, sec. 156, Comment a (1957).

Citing a recent decision of the Commonwealth Court in the case of Manor Township v. Millersville Borough, 9 Pa. Commonwealth Ct. 143 (1973), township has argued that section 426 of the Borough Code requires a signer to sign the annexation petition personally, absent compelling reason, properly supported, for his inability so to do. It contends that no such compelling reason existed to support the representative signatures on subject petition and for that reason they are invalid.

There can be no question after a proper reading of section 426 of the Borough Code that the petition for annexation must bear the signature of a majority of

the freeholders of the area to be annexed, just as a note or other instrument bearing witness to the desires of a property owner must likewise bear the signature of its maker. But Pennsylvania courts have recognized the very real need for property owners to execute more than one transaction at competing time in order that the progress of government and business not be forestalled by each man's inability to be at two places at once.[1] Convenience of process is therefore served by the recognized freedom to act through agents without having to prove an absolute inability to act personally.

This freedom, of course, is not without some limitations. But, generally speaking, it is limited sooner by the requirement for written authorization than by total proscription. In this regard, Pennsylvania courts have applied agency principles to permit a duly authorized agent to manage his principal's real property interests, holding that an agent may be constituted by parol except where he is to convey an estate in land: Craig v. Cosgrove, 277 Pa. 580 (1923), or create a lease for a term in excess of three years: Burg v. Betty Gay of Washington, Inc., 423 Pa. 485 (1966). Clearly, the petition in question would operate without that restriction since requesting annexation is not a disposal of property, but rather the first step in contracting for municipal government services.

More specifically, our courts have recognized

---

1. Pennsylvania courts have upheld the signature of a person made to a note or other instrument by a duly authorized agent: Harr, Secretary of Banking, v. Bernheimer, 322 Pa. 412 (1936); Lebowitz v. Keystate Insurance Agency, Inc., 198 Pa. Superior Ct. 495 (1962). See also, Uniform Commercial Code, April 6, 1953, P.L. 3, sec. 3-403, 12A PS §3-403, reenacted October 2, 1959, P.L. 1023, sec. 3.

that the signature of a person may be made to a petition by his duly authorized agent, where the subject of that petition is a request for municipal services, such as street paving: Brown v. City of Philadelphia, 3 Sadler 45 (1886); California Borough v. Powell, 50 Pa. Superior Ct. 521 (1912).

It would therefore seem apparent that an agent who may bear the desires of his principal into contract for one municipal service may likewise express his principal's desire to contract for all that a municipal government must offer, where the long established requirements of proper execution have been met.

The Commonwealth Court in Manor Township has confronted this authority. It has interpreted a statute whose wording makes no clear distinction between the personal signature of the freeholder and his signature by way of a personal representative, to require the personal signature of the freeholder in all but the most extreme cases. Because that decision is a departure from established agency principles as they have been applied to transactions involving the use of real property, a close examination of the Manor Township decision is warranted before recognizing it as controlling the instant case.

The sole issue before the court in Manor Township was the validity of the petition which was filed with the borough and which purportedly indicated assent to the annexation by a majority of the freeholders in the area of the township to be annexed. The total number of freeholders in that area was 74, and the petition bore signatures representing 39 of those freeholders. Manor Township challenged three of the signatures, which constituted two freehold interests, offering testimony that one

John M. Barley had signed the names of Benjamin M. Barley, Hazel B. Newcomer and J. Vernon Newcomer to the annexation petition. The borough responded by alleging that two signatures had been authorized by prior oral agreement and that John Barley had received subsequent written authority to sign all three names to the petition.

Judge Blatt, writing for the Commonwealth Court, found fault with the signatures in question first because they did not comply with clearly established requirements for signing by a legal representative of the freeholder. The judge relied on two annexation cases, each one requiring the petition for annexation to show on its face the representative capacity of the agent signing and the identity of the principal for whom the agent has signed, in order to be upheld as valid. See: Annexation of Lands in Mount Carmel Township, 41 D. & C. 2d 312 (1966); Annexation of Lands in Penn Township, 29 D. & C. 2d 718 (1962). Since none of the three signatures questioned by Manor Township indicated that someone had signed for the freeholder,[2] proper signing by agency had not been effected, regardless of what authority, if any, had been granted. John Barley's signatures were, therefore, invalid, as was the petition.

Having thus invalidated the petition on this reason alone, the remainder of Judge Blatt's opinion appears somewhat advisory. It must be considered, however, because it interprets what the judge believed to be ". . . the only case in this Com-

---

2. See note 1, page 148 of the Manor Township opinion where it says: "there is no indication whatever on the petition that any of its signatures were affixed by anyone signing in a representative capacity for anyone else."

monwealth where a fact situation similar to the one here involved has arisen," together with the wording of section 426 of the Borough Code, to require that a signer sign personally in all but the most extreme circumstances.

Judge Blatt referred to the Salisbury Township Annexation Case, 172 Pa. Superior Ct. 262 (1953), in which four signatures to an annexation petition were challenged. The court in Salisbury never decided on the validity of each of the four signatures in question, because it found the remaining ten signatures properly constituted a majority of the freehold interests of the land to be annexed. Appellants took the position that certain unauthorized signatures vitiated the entire proceeding by a showing of bad faith in the forgery of at least one of those names to the petition. See, brief for the appellants at 13.

The court responded as follows:

"At the hearing in the court below it appeared that four persons whose names were on the petition had not signed, although two of the four had orally authorized the affixing of their signatures. Appellants take the position that the *unauthorized* signatures vitiated the entire proceeding. It is not questioned in the court below that the ten remaining *unchallenged* signatures constituted a majority of the freeholders of the territory to be annexed . . . The court below properly held that the unauthorized signatures could be disregarded where sufficient freeholders signed to constitute a majority. The unauthorized signatures did not vitiate the proceeding as long as the statutory requirement was fulfilled and the admittedly genuine signatures constituted a majority in number of the freeholders."

Salisbury Township Annexation Case, 172 Pa. Superior Ct. 262, 269 (1953) (emphasis added).

Judge Blatt placed particular emphasis on the use of the word "unauthorized" in the second sentence of this quote compared with the phrase "ten remaining [unchallenged] signatures . . ." appearing in the third sentence: Manor Township v. Millersville Borough, 9 Pa. Commonwealth Ct. 143, 147 (1973). She wrote:

"While the Superior Court in Salisbury did not expressly decide on the validity of each signature which had not been affixed by the person whose name was signed, the Court did indicate, however, that some of the fourteen signatures were 'unauthorized' and that the 'ten remaining signatures constituted a majority . . .' This seems to indicate that the Court considered all of the four other signatures to have been 'unauthorized' for the purpose of validating the petition, even including the two signatures for which it was agreed that there had been oral authorization."

Id., at 147.

It is difficult to believe that the Superior Court in Salisbury would use the term "unauthorized" to describe signatures that had been authorized as well as those that had not. The simple explanation is that they did not. The term "unauthorized" was used to describe those signatures that appellants claimed to have "vitiated the entire proceeding." Careful examination of appellants' brief reveals that only those names which were allegedly forged to the petition with no authorization (oral or otherwise) were claimed by appellants to have vitiated the entire proceeding (by a showing of fraud). This would exclude the two signatures recognized by the court below to have been orally authorized, leaving

those that were "unauthorized"—as the court quite clearly stated.

This interpretation would be consistent with the *actual* wording of the Superior Court's opinion where it said: "the ten remaining *unchallenged* signatures constituted a majority." Unfortunately, Judge Blatt omitted the word "unchallenged" and lost the real sense of that phrase, which was intended to contrast the ten remaining signatures with the four that were *challenged,* not those that were "unauthorized."

Judge Blatt's inferential treatment of the Salisbury decision was erroneous. In fact, there has been *no decision by an appellate court in this Commonwealth* holding that an annexation petition should be found invalid for want of sufficient signatures simply because one or more of the majority required had signed the petition by a legal representative in compliance with the procedures set forth under section 156 of the Restatement 2d, Agency.

The consequent decision of the Commonwealth Court that section 426 of the Borough Code requires a signer to sign the annexation petition personally in all but the most extreme cases is therefore unrelated to established precedent. That part of the Manor Township opinion remains purely an interpretation of the wording of a statute which makes no clear distinction between personal signature of the freeholder and his signature by way of a personal representative.

The applicable portion of the Borough Code required that the petition to Borough Council "shall be signed by a majority in number of all of the freeholders of the territory to be annexed." The Manor Township court's interpretation of the wording of this statute rests solely on its attributing to

the word "shall" an imperative as opposed to a permissive meaning. Such imperative use of the word "shall," however, does not alone add more to the meaning of its phrase than the requirement that a majority of the freeholders must sign. It does not resolve how they must sign or that they must not sign by agency.

In final consideration of that issue, the Manor Township court looked to what it believed to be the intention and purpose of the statute—to provide a method by which to ascertain what the majority of the freeholders in a specific area desire as to proposed annexation—and concluded: "it seems reasonable, therefore, to require that a signer must sign personally . . .": Manor Township v. Millersville Borough, supra, at 148. Personal signature, however, is not the only way to serve that purpose well. An accurate record of which freeholders agree to a proposed annexation can be ascertained as well by the signatures of duly authorized agents as by those of the freeholders themselves. The critical point being not who signs for a freeholder, but whether or not the freeholder's desires were properly represented. A properly executed signature by agency would satisfy that requirement, at the same time honoring long established precedent to allow a property owner the freedom to act by way of his duly authorized agent.

Consequently, the Manor Township court's interpretation of the Borough Code appears not only to have been advisory, but an interpretation not required by the statute, and one which confronts existing law on that issue.

Accordingly, it is the opinion of this court that where each of the three signatures questioned in the Carlisle Borough petition was properly exe-

cuted in accordance with established agency law and each signature had been duly authorized by a freeholder who, because of his removal from Cumberland County at the time the petition was executed, exercised his right to have a properly constituted agent sign for him, the three signatures in question should be upheld in compliance with section 426 of the Borough Code.

## ORDER

And now, January 28, 1974, the order of court dated December 6, 1972, is affirmed.